UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
            :
EDUARDO UBRI,            :
            :
            :        23-CV-7954 (VSB)
          Plaintiff,  :
            :        **OPINION & ORDER**
      -against-      :
            :
            :
JOSHUA BALSAM, *et al.*,    :
            :
          Defendants.  :
            :
------------------------------------------------------------X

Jeffrey Robert Maguire
Stevenson Marino LLP
White Plains, NY
*Counsel for Plaintiff*

Steven A. Weg
Koffsky Schwalb LLC
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      On September 26, 2024, the parties filed their second joint letter motion seeking approval of the settlement agreement reached in this Fair Labor Standards Act ("FLSA") case. (Doc. 58; *see also* Doc. 58-1 (the "Settlement Agreement")). Parties may not privately settle FLSA claims and stipulate to the case's dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(A)(ii) without the approval of the district court or the Department of Labor. *See Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 807 (2d Cir. 2022); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). In the absence of Department of Labor approval, the parties must demonstrate to me that their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (internal quotation marks omitted).

1

I denied the parties' first joint letter motion seeking settlement approval because it provided me with an estimate of Plaintiff's maximum recovery for solely his unpaid-overtime claims, ignoring the other claims asserted in the Amended Complaint. (Doc. 57 at 3–4.) I instructed the parties that any future request for settlement approval should include a calculation of Plaintiff's best-case recovery that addressed all possible sources of damages. (*Id.*) Having reviewed the materials before me, I find that the parties have addressed the deficiencies I identified with their first joint letter motion, and that the Settlement Agreement is fair and reasonable. Therefore, the Parties' joint motion seeking an order approving the Settlement Agreement is GRANTED. This action is DISMISSED with prejudice pursuant to Fed. R. Civ. P. 41(a).

## I.    **Legal Standard**

To determine whether a settlement is fair and reasonable under the FLSA, I "consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citations omitted). In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.* "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *McDonald ex rel. Prendergast v. Pension*

*Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  A fee may not be reduced "'merely because the fee would be disproportionate to the financial interest at stake in the litigation.'" *Fisher*, 948 F.3d at 602 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).

"When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Id.* at 597.

## II. Discussion

I have reviewed the Settlement Agreement, supporting evidence, and supplemental material in order to determine whether the terms are fair, reasonable, and adequate.  I find that they are.

### A. *Settlement Amount*

I first consider the sum provided for in the Settlement Agreement.  Plaintiff's Amended Complaint alleges violations of the overtime provision of the FLSA, (Doc. 13 ("Amended Complaint" or "Am. Compl.") ¶¶ 33–39), and the New York Labor Law ("NYLL"), (*id.* ¶¶ 40–45), as well as violations of the minimum wage and timely wage provisions of the NYLL, (*id.* ¶¶ 46–56), and the split-shift, wage statement, and notice requirements of the NYLL, (*id.* ¶¶ 57–70).  When seeking approval of a FLSA settlement, the plaintiff "must supply calculation addressing all possible sources of a plaintiff's potential damages." *Leonardo v. Reza Fast Food, Inc.*, No. 20-CV-8879, 2022 WL 2440975, at *2 (S.D.N.Y. July 5, 2022) (collecting cases).

The settlement amount is $40,000.  (Doc. 58 at 2.)  Plaintiff asserts that if he had prevailed on his FLSA claims, he would have received $6,632.36 in unpaid wages, which would have doubled under the FLSA.  (Doc. 58 at 3.)  As Plaintiff alleges that he was paid $2.00 below the minimum wage from January 1, 2018 through December 31, 2018, and $4.00 below the minimum wage from January 1, 2019 through October 1, 2021, his minimum wage damages would be

$30,158.29, plus an equal amount in liquidated damages under the NYLL. (*Id.*) If proven, Plaintiff's split shift damages would be $1,252.16, which would also be doubled under the NYLL. Plaintiff notes a further $10,000 in his assessment of damages based on violations of the NYLL's notice and recordkeeping requirements, (*id.* at 3–4), which each have a statutory limit of $5,000 in damages. N.Y. Lab. Law § 198. Putting all this together, it appears that the total possible settlement award against which I should evaluate the Settlement Agreement is $84,833.45.

Under the Settlement Agreement, Plaintiff would receive $40,000, less $13,024.67 in attorneys' fees and $926.00 in costs, (Doc. 58 at 2), for an actual recovery of $26,049.33, or approximately 31% of his total possible recovery. In this District, settlements of 12 to 13 percent of the total possible recovery are the low-end of what is considered reasonable in the context of a *Cheeks* review. *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 323 (S.D.N.Y. 2021) (collecting cases) (finding that a settlement representing roughly 13 percent of the possible recovery was at the low-end of reasonable).

This settlement is thus well within the range of reasonable recoveries, particularly given the litigation risks of this case. Defendants' position is that Plaintiff was an independent contractor and thus not covered under the FLSA or NYLL. (Doc. 58 at 4.) There are also issues regarding whether one defendant was properly served, and questions about whether Defendants could withstand a greater judgment, which could complicate the process of Plaintiff collecting on any judgment he received. (*Id.*)

Additionally, $10,000 of the total potential recovery stems from statutory damages provided for by the NYLL for notice and record-keeping violations. However, *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), has substantially complicated plaintiffs' ability to obtain damages for violations of these provisions by requiring plaintiffs to allege concrete harms as a result of the failure to provide statutorily required notice. *See, e.g.*, *Lucero v. Shaker Contractors, Corp.* No.

4

21-CV-8675, 2023 WL 4936225, at *3 (S.D.N.Y. July 27, 2023) ("Courts in this District have applied *TransUnion* to find plaintiffs lack standing to bring claims under the NYLL's wage notice and wage statement provisions when those plaintiffs do not make specific allegations of concrete injuries they suffered as a result of their employers' failure to provide required wage records.") Plaintiff's complaint does not make such specific allegations, (*see* Am. Compl. ¶¶ 63–70), and the papers submitted in support of the Settlement Agreement also do not provide such details, suggesting further complications for recovering on this element of Plaintiff's claim.

Additionally, I find nothing in the record suggesting that the Settlement Agreement is tainted by fraud or collusion or that it is the product of anything less than arm's-length bargaining between experienced counsel. Accordingly, the settlement sum is fair and reasonable given comparable cases in this District.

### A. Remaining Provisions

I have reviewed the remainder of the Settlement Agreement, and I find the remaining provisions fair and reasonable. I address the release clause and the non-disparagement clause in further detail below.

#### 1. Release Clause

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15-CV-2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL

6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).  For this reason, "[a] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are 'limited to the claims at issue in this action.'"  *Cionca v. Interactive Realty, LLC*, No. 15-CV-5123, 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016) (quoting *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015)).

The Settlement Agreement provides for a "Limited Release by Plaintiff."  (Doc. 58-1 § 3.)  This release is restricted to

> any and all known and unknown wage-related claims, complaints, causes of action, lawsuits, demands, back-wages, benefits, attorneys' fees, debts, controversies, damages, judgments, in law or equity, of any kind, nature and character, which Plaintiff, his heirs, executors, administrators, agents, successors, and assigns have, had, or hereafter can have against any of the Releasees from the beginning of time to the date of this Agreement for claims arising under the Fair Labor Standards Act, New York Labor Law, or any other law, regulation or ordinance regulating the payment of wages.

(*Id.*)  Given that this release is expressly limited to wage-related claims that predate the Settlement Agreement, the terms are fair and reasonable.

### 2. Non-disparagement Clause

"[H]ighly restrictive confidentiality provisions" have been recognized to be "in strong tension with the remedial purposes of the FLSA."  *Cheeks*, 796 F.3d at 206 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 177).  Therefore, "unqualified non-disparagement clause[s] . . . cannot withstand scrutiny" under *Cheeks*.  *DePietro v. Levitt LLP*, 706 F. Supp. 3d 375, 377 (E.D.N.Y. 2023) (citation omitted).  However, "not every non-disparagement clause in an FLSA settlement is per se objectionable."  *Nights of Cabiria*, 96 F. Supp. 3d at 181 n.65 (emphasis omitted).  "[P]laintiffs may contract away their right to say things that are insulting or calumnious about the defendants," or even to say anything negative about the defendants, so long as there is "a carve-out for truthful statements about plaintiffs' experience litigating their case."  *Id.*

Such is the case here.  Both Plaintiff and individual defendant Joshua Balsam agree to refrain from

> (1) all conduct, verbal or otherwise, which would materially damage the reputation, goodwill or standing in the communities of the [other party], and (2) referring to or in any way commenting on [other party] in or through the general media or any public domain (including without limitation, internet websites, blogs, social media and the like), in a way that would materially damage the reputation, goodwill or standing in the communities of the [other party], unless compelled to do so by legal process.

(Doc. 58-1 § 6.)  The Settlement Agreement goes on to clarify that "nothing shall prevent any party to this agreement from making truthful statements about the terms of the settlement agreement or their experience in this litigation." (*Id.*)  As the mutual non-disparagement clause contains an express carve-out for truthful statements about each party's experience litigating the case, I find that it is acceptable.

### B.   *Attorneys' Fees*

A district court in this Circuit, in its discretion, may calculate attorneys' fees using either the lodestar method or the percentage of the fund method.  *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  As a general matter, the "starting point" in determining reasonable attorneys' fees is "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "presumptively reasonable fee" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008))).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum*, 465 U.S. at 897, and must provide the court with sufficient information to assess the fee application, *see N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  "Fees of one-third in FLSA cases are routinely approved in this Circuit." *Manley v. Midan Rest. Inc.*, No. 14-CV-1693, 2017 WL 1155916, at *9 (S.D.N.Y. Mar. 27, 2017) (collecting cases); *see also Zorn-*

*Hill v. A2B Taxi LLC*, No. 18-CV-11165, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) ("[C]ourts in the Second Circuit routinely award attorney's fees in FLSA settlements of one-third of the total recovery." (collecting cases)). Additionally, "[c]ourts regularly award lodestar multipliers from two to six times lodestar." *Johnson v. Brennan*, No. 10-CV-4712, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) (collecting cases); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (finding that "the lodestar sought by Class Counsel, approximately 6.3 times, falls within the range granted by courts. . . . ").

Under the Settlement Agreement, Plaintiff's counsel will receive $13,950.67 in fees and costs, of which $13,024.67 is attorneys' fees. (Doc. 58 at 5–6; Doc. 58-1 § 2(a)(i)(b)). This attorneys' fees award is one-third of Plaintiff's total recovery, which is typical in this Circuit. *See Manley*, 2017 WL 1155916, at *9. The billing records submitted by Plaintiff's counsel indicate that counsel charges a rate of $400 an hour and spent 35.3 hours on this matter, which would have amounted to a total bill of $14,120.00, plus costs. (Doc. 58-3.) This hourly rate falls within what courts in this District have found to be reasonable. *See, e.g., Ochoa v. Prince Deli Grocery Corp.*, No. 18-CV-9417, 2021 WL 5235222, at *2 (S.D.N.Y. Nov. 8, 2021) (calling $450/hour the "prevailing maximum rate in the Southern District"). The 35.3 hours spent by Plaintiff's counsel on this matter is also reasonable. The proposed $13,059.67 fee thus represents a slight discount from the $14,120.00 sum associated with the lodestar calculation. Given this, I find the requested attorneys' fees and costs under the Settlement Agreement to be fair and reasonable.

### III.  **Conclusion**

For the reasons stated above, I find that the proposed Settlement Agreement to be fair and reasonable.  Accordingly, the Settlement Agreement is APPROVED.

This action is DISMISSED with prejudice pursuant to Fed. R. Civ. P. 41(a) and I shall retain jurisdiction solely for the purpose of enforcing the Settlement Agreement.

SO ORDERED.

Dated:      June 20, 2025
            New York, New York

_____
Vernon S. Broderick
United States District Judge