UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                             :

EDUARDO UBRI,                         :

                     Plaintiff,    :

                             :

            - against -        :                23-CV-7954 (VSB)

                             :

MAJESTIC ASSOCIATES, LLC, *et al.*,   :         **OPINION & ORDER**

                             :

                 Defendants.  :

                             :
------------------------------------------------------------X

Appearances:

Jeffrey Robert Maguire
Stevenson Marino LLP
White Plains, NY
*Counsel for Plaintiff*

Steven A. Weg
Koffsky Schwalb LLC
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      On September 26, 2024, the parties filed their second joint letter motion seeking approval

of the settlement agreement reached in this Fair Labor Standards Act ("FLSA") case.[1]  (Doc. 58;

*see also* Doc. 58-1 (the "Settlement Agreement").)  On June 20, 2025, I approved the Settlement

Agreement, dismissed the action with prejudice, and retained jurisdiction solely for the purpose

of enforcing the Settlement Agreement.  (Doc. 69 at 9.)

      On July 31, 2025, Plaintiff Eduardo Ubri ("Plaintiff" or "Ubri") moved to enforce the

---

[1] I denied the parties' first joint letter motion seeking settlement approval because it provided me with an estimate of Plaintiff's maximum recovery for solely his unpaid-overtime claims, ignoring the other claims asserted in the Amended Complaint.  (Doc. 57 at 3–4.)  I instructed the parties that any future request for settlement approval should include a calculation of Plaintiff's best-case recovery that addressed all possible sources of damages.  (*Id.*)  The parties' second joint letter motion seeking approval of their settlement agreement rectified that deficiency.

Settlement Agreement.  (Doc. 70 ("Motion to Enforce" or "Pl's Mot.").)  Ubri stated that

Defendants Majestic Property Management Associates LLC, Joshua Balsam, and 3871 Village

Court Associates LLC (collectively, "Defendants") did not pay the settlement amount within the

allotted time, nor did they respond when Ubri provided notice of default and an opportunity to

cure.  (*Id.* at 1–3.)  In light of the default, Ubri seeks a judgment of $60,000, in addition to

reasonable attorneys' fees.  (*Id.* at 3.)  On August 1, 2025, Defendants filed a cross-motion

opposing Plaintiff's Motion to Enforce and seeking a four-month extension of time in which to

pay the settlement amount.  (Doc. 71 ("Defs' Mot.").)  On August 4, 2025, Plaintiff filed a reply.

(Doc. 72 ("Reply").)

On August 14, 2025, I held a telephonic conference with the parties and directed them to

meet and confer.  (Doc. 74.)  The parties did so, and on August 21, 2025, they submitted a joint

status update informing me that they had failed to resolve the dispute.  (Doc. 75.)  In the joint

update letter, Plaintiff reiterated his request for me to rule on his Motion to Enforce the

Settlement Agreement.  (*Id.* at 1.)

On April 2, 2026, I issued an order for the parties to indicate whether this dispute is still

active in light of the intervening time since the Motion to Enforce was filed.  (Doc. 76.)  On

April 7, 2026, the parties submitted a status report indicating the dispute was still active.  (Doc.

77.)

For the reasons that follow, Plaintiff's Motion to Enforce is GRANTED IN PART and

DENIED IN PART.  Defendants' cross-motion for an extension of time to pay the settlement

amount is DENIED as moot.

## I.     <u>Legal Standard</u>

"[W]here a federal suit has already been dismissed based on a settlement agreement, and the plaintiff thereafter asks the court to enforce the parties' agreement, the court must first satisfy itself that it has retained ancillary jurisdiction to act." *Romero v. New Blue Flowers Gourmet Corp.*, No. 16-CV-8753, 2021 WL 860986, at *2 (S.D.N.Y. Mar. 8, 2021).  Courts retain ancillary jurisdiction over enforcement of a settlement agreement where the order of dismissal "either (1) expressly retain[s] jurisdiction over the settlement agreement, or (2) incorporate[s] the terms of the settlement agreement in the order." *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–81 (1994)).

Once ancillary jurisdiction over a settlement agreement is established, courts look to the general principles of contract interpretation.  "A settlement is a contract that, 'once entered into, is binding and conclusive.'" *Romero*, 2021 WL 860986, at *2 (alterations adopted) (quoting *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007)).  Thus, "[a]n action to enforce a settlement agreement is 'in essence, a breach of contract action governed by state law.'" *O'Quinn v. City of New York*, No. 19-CV-09663, 2025 WL 966015, at *2 (S.D.N.Y. Mar. 31, 2025) (alterations adopted) (quoting *Gomez v. Terri Vegetarian LLC*, No. 17-CV-00213, 2021 WL 2349509, at *3 (S.D.N.Y. June 9, 2021)), *appeal dismissed* (Sept. 12, 2025).

## II.      Discussion

I explicitly provided in the Opinion & Order approving the parties' Settlement Agreement that "I shall retain jurisdiction solely for the purpose of enforcing the Settlement Agreement." (Doc. 69 at 9.)  Thus, I have ancillary jurisdiction "to enforce the [S]ettlement [A]greement according to its terms, and 'may proceed to enforce the agreement by entry of judgment.'" *Barbecho v. Matrat LLC*, No. 15-CV-170, 2021 WL 3862662, at *1 (S.D.N.Y. Aug. 30, 2021) (quoting *Romero*, 2021 WL 860986, at *3).

The Settlement Agreement provides that it "shall be governed by and enforced in accordance with the laws of the State of New York without regard to its conflicts-of-law principles." (Settlement Agreement 7.)  Under New York law, a breach of contract claim, such as a motion to enforce a settlement agreement, has four elements:  "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Barbecho*, 2021 WL 3862662, at *2.

First, there is no dispute that there is an enforceable agreement.  The parties executed the Settlement Agreement and twice jointly moved for judicial approval of the agreement.  (*See* Docs. 56, 58).  On June 20, 2025, I issued an Opinion & Order finding the Settlement Agreement to be fair and reasonable and approving it.  (Doc. 69.)  Thereafter, the Settlement Agreement went into effect.

Second, I find that Plaintiff performed his obligations under the Settlement Agreement. Defendants question Plaintiff's performance on the basis of "significant concerns that the W9 form provided by the Plaintiff was erroneous." (Defs' Mot. 2.)  The Settlement Agreement provides that there are certain conditions that must be met prior to executing a stipulation of dismissal in this case, including that "Defendants' counsel receives a completed IRS Form W-9

4

for Plaintiff and Plaintiff's counsel." (Settlement Agreement 5.)  The Agreement further states that "[f]or the avoidance of doubt, no payment shall be due to either Plaintiff or Plaintiff's counsel until Plaintiff fully complies with this [condition]." (*Id.*)

I approved the parties' Settlement Agreement on June 20, 2025.  (Doc. 69.)  Plaintiff filed copies of emails exchanged between the parties as exhibits to the Motion to Enforce, showing that on June 26, 2025, Plaintiff's counsel sent an email to Defendants' counsel attaching "Plaintiff's and the Firm's W9 form." (Doc. 70-2.)  On July 9, 2025, Defendants' counsel stated the following:  "My client is concerned that the W9 is for an individual with a different name than the plaintiff or anyone ever employed by the defendants, and with an out of state address that was never used by the Mr. Ubri he knows.  Please advise." (Doc. 70-4.)  Plaintiff's counsel quickly responded, stating:  "My concern is that your client is attempting to renege on an agreement reviewed and approved by a federal court.  I am looking at the W9 now and it is both my client's correct name and correct address." (Doc. 70-5.)  Later on July 9, 2025, Plaintiff's counsel sent an email asserting a notice of default, affording Defendants ten days to cure the default, and informing Defendants that if they did not cure the default, Plaintiff would seek 150% of the settlement amount plus attorney's fees and costs under the default provision of the Settlement Agreement.  (Doc. 70-3.)  On July 30, 2025, Plaintiff's counsel again contacted defense counsel, saying that they had not received payment and Defendants should provide confirmation of payment by close of business or Plaintiff would proceed under the default provision.  (Doc. 70-6.)

Plaintiff's Motion to Enforce explains that for the duration of Plaintiff's employment, Defendants had made Plaintiff's checks payable to "Eduardo Ubri," (Pl's Mot. 2), which is the name that Plaintiff has used in this litigation as well.  The W-9 Form furnished to Defendants

lists Plaintiff's name as "Eduardo Jose Ubri Sanchez." (*Id.* at 3.) Plaintiff explains that "while Plaintiff commonly goes by Eduardo Ubri, his official full name is Eduardo Jose Ubri Sanchez, which is why his IRS W9 tax form contains that name." (*Id.* at 3 n.1.) Plaintiff further explains that the use of a shorter given name and a longer full name with three or four parts is typical of Mexican naming culture. (*Id.*) In addition, although Plaintiff lived in New York during his employment with Defendants, (*see* Doc. 1 ¶ 8), Plaintiff states that he has since moved to Texas, hence the new address, (Pl's Mot. 3 n.1).

Although I disagree with Plaintiff's statement that Defendants' concerns about Plaintiff's W-9 are "patently disingenuous and in bad faith," (*id.*), Defendants have not explained why they continue to harbor concerns after Plaintiff's explanation of the name and address used on the W-9. Plaintiff's counsel confirmed over email on July 9, 2025 in response to Defendants' concerns that he had checked and the W-9 had "both my client's correct name and correct address." (Doc. 70-5.) Defendants did not follow up with any questions or further concern about the name or address, and in fact did not respond at all. On July 31, 2025, Plaintiff filed the Motion to Enforce, which further explained the name and address discrepancy. (*See* Pl's Mot.) In response, Defendants do not argue that Plaintiff is being disingenuous in his explanations, and instead simply state that "Defendant Balsam had significant concerns that the W9 form provided by Plaintiff was erroneous [as it] contain[ed] an address in Texas and a different name than the Plaintiff herein that the Defendants were familiar with." (Defs' Mot. 2.) Defendants have failed to explain why Plaintiff's W9 is insufficient in light of his explanation of provided concerning his name and address and the assurances made by Plaintiff's counsel.

Furthermore, the Settlement Agreement provides that no payment shall be made until "Defendants' counsel receives a completed IRS Form W-9 for Plaintiff and Plaintiff's counsel."

(Settlement Agreement 5.)  As an initial matter, there is no dispute that Defendants' counsel received a completed IRS Form W-9.  There is no condition in the Settlement Agreement allowing Defendants to avoid payment when they have received a completed IRS From W-9 for Plaintiff, but they believe it to be erroneous based on a discretionary judgment that it is not a precise match to the information Plaintiff provided during his employment, and Defendants have not cited any support for the proposition that they may withhold payment on such a basis.

In light of the plain language of the Settlement Agreement, Plaintiff's explanation of the name and address in his W-9, and Defendants' failure to respond on the merits to Plaintiff's explanation, I find that Plaintiff has fulfilled the W-9 condition of the Settlement Agreement. Defendants have not raised any concerns about Plaintiff's compliance with the remainder of the Settlement Agreement.  Thus, I find that Plaintiff has adequately performed his obligations under the Settlement Agreement, fulfilling the second element of a breach-of-contract claim.  *See Barbecho*, 2021 WL 3862662, at *2.

Turning to the third element, I find that Defendants breached the Settlement Agreement. The Agreement provides as follows:

> As a full settlement and final satisfaction of the FLSA and NYLL claims that Plaintiff has, had, or may have against Defendants, and in consideration for the agreements and obligations set forth herein, including, but not limited to, the limited release set forth in Paragraph 3 below, Defendants agree to pay Plaintiff the sum total of Forty Thousand Dollars and Zero Cents ($40,000.00) (the "Settlement Amount") as follows:  No later than November 22, 2024, Defendants will deliver [the Settlement Amount] by overnight delivery to Stevenson Marino LLP.

(Settlement Agreement 2.)  Although the Agreement provides for payment by November 22, 2024, I did not approve the Settlement Agreement until June 20, 2025.  The Agreement does "not account for the specific timing of payment should the Court approve and dismiss the action following the November 22, 2024 date that the parties agreed upon."  (Reply 2.)

In the absence of any specific date or timeline set for payment after the passage of the November 22, 2024 date, Defendants seek "an extension of four (4) months from [August 1, 2025] to pay the Settlement Payment." (Defs' Mot. 1.) Defendants argue that the original November 22, 2024 date was designed to be approximately four months after the date the Settlement Agreement was signed by the parties, and therefore the parties intended to afford Defendants four months to furnish the payment. (*Id.*) In contrast, Plaintiff argues that New York law provides a default settlement payment due date of 21 days. (Reply 2.)

Plaintiff is correct. New York law provides that:

> When an action to recover damages has been settled, any settling defendant . . . shall pay all sums due to any settling plaintiff within twenty-one days of tender, by the settling plaintiff to the settling defendant, of a duly executed release and a stipulation discontinuing action executed on behalf of the settling plaintiff.

NY CPLR § 5003-a(a). This 21-day deadline is the "default rule" for when payment is due. *See C.S. v. N.Y.C. Dep't of Educ.*, No. 19-CV-11419, 2021 WL 1851366, at *1, 4 (S.D.N.Y. Apr. 8, 2021) (finding that CPLR § 5003-a applies to the settlement of federal claims in federal court). Defendants' arguments to the contrary seeks to have me ignore New York law and read into the contract a timeline that does not appear in the plain language of the Settlement Agreement. Even assuming that Defendants are correct that the parties intended to give Defendants a four-month window in which to pay the settlement amount, which is far from clear given the judicial approval process that the Settlement Agreement went through, the Defendants failed to identify a term in the Settlement Agreement itself that provides for a four-month payment window, which dooms Defendants' requested four-month timeline. Moreover, under New York law, "where contract language is clear and unambiguous, courts will enforce an agreement according to its terms, without looking outside the four corners of the document." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 188 (2d Cir. 2016) (citing *Brad H. v. City of New York*, 17 N.Y.3d

180, 185 (N.Y. 2011)).  The Settlement Agreement unambiguously sets a November 22, 2024 payment date.  As the Settlement Agreement was approved after November 22, 2024, making that term impossible, it incorporates the default rule for settlement payments under New York law, which requires full payment within 21 days.  In any event, as a practical matter, the four months have long since passed.

Thus, I find that Defendants have breached the Settlement Agreement, and Plaintiff has been damaged in the amount that he is entitled to under the Agreement.  Plaintiff's Motion to Enforce the Settlement Agreement "requests that the Court enforce the terms of the Agreement, which requires Defendants to pay 150% of the settlement of $40,000.00, which is $60,000.00, as well as attorneys' fees for Plaintiff's attorney time expended in seeking judgment for Defendants' breach, which Plaintiff calculates to be three hours as of this filing, billed at the $400.00 per hour approved by the Court in its Order."  (Pl's Mot. 3.)

I find that Plaintiff adhered to the condition in the Settlement Agreement requiring that, in the event of nonpayment, Plaintiff provide notice of default to Defendants and give Defendants ten business days to cure the default.  (*See* Docs. 70-3, 70-5, 70-6.)  Defendants failed to cure the default by the close of business on July 30, 2025, and Plaintiff brought the default to my attention on July 31, 2025.  The Settlement Agreement provides that "[i]f Defendants fail to timely cure its breach, Defendants shall consent to judgment in the amount of 150% of the settlement amount, less any settlement payments previously made."  (Settlement Agreement 4)  The settlement amount is $40,000, and 150% of the settlement amount is $60,000.  (*Id.* at 2.)  To date, Defendants have not made any payments to Plaintiff.  (*See* Doc. 75.)  Plaintiff is therefore entitled to a judgment against Defendants for $60,000, and Plaintiff's Motion to Enforce the Settlement Agreement is hereby GRANTED IN PART.  Defendants' cross-motion

seeking a four-month extension of time in which to pay the settlement amount is hereby DENIED.

The Settlement Agreement also provides that, in the event of a breach, Plaintiff is entitled to "reasonable attorneys' fees as determined by the Court and costs associated with seeking judgment for Defendants' breach including costs and fees for any motion for costs and fees." (Settlement Agreement 4.)  "Second Circuit precedent requires a party seeking an award of attorneys' fees to support its request with contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Filo Promotions, Inc. v. Bathtub Gins, Inc.*, 311 F. Supp. 3d 645, 649 (S.D.N.Y. 2018) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).  "Fee applications that do not contain such supporting data 'should normally be disallowed.'" *Id.* at 649–50 (quoting *Carey*, 711 F.2d at 1154).

Plaintiff seeks attorneys' fees but does not provide any billing records to corroborate the request, and thus Plaintiff's request for attorneys' fees is DENIED without prejudice to filing a motion seeking attorneys' fees containing the supporting documentation required under the law.

### III.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Motion to Enforce the Settlement Agreement is GRANTED IN PART and DENIED IN PART.  Defendants' cross-motion is hereby DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 70 and 71.

Additionally, the Clerk of Court is respectfully directed to enter judgment against Defendants and in favor of Plaintiff for $60,000, plus post-judgment interest[2] at the statutory rate, calculated from the date on which the Clerk of Court enters final judgment until the date of payment.

SO ORDERED.

Dated: April 9, 2026
       New York, New York

_____
Vernon S. Broderick
United States District Judge

---

[2] Although Plaintiff does not specifically request post-judgment interest in his motion to enforce the Settlement Agreement, the Second Circuit has made clear that "the award of post-judgment interest is mandatory on awards in civil cases." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (internal quotation marks omitted); *see also Mulligan Funding LLC v. Tommy Interior Contracting Corp.*, 741 F. Supp. 3d 1, 16 (E.D.N.Y. 2024) ("Plaintiff does not seek post-judgment interest, but the very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." (internal quotation marks omitted)).